## HARTFORD ACCIDENT & INDEMNITY COMPANY
### v.
## WESTERN CASUALTY & SURETY COMPANY.
### No. 2156.

United States District Court
S. D. Mississippi,
Jackson Division.

May 27, 1959.

G. J. Thornton, Kosciusko, Miss., for plaintiff.

Vardman S. Dunn, Jackson, Miss., for defendant.

BEN C. DAWKINS, Sr., District Judge.

Filed originally in the State Court of Mississippi, this case was removed here on the ground of diversity.

One H. C. Vaughan on December 30, 1947, signed a contract with United States to construct a portion of the Natchez Trace Parkway in Leake County, Mississippi, for the sum of $305,760 and plaintiff became the surety on his performance bond for the penal sum of $152,880. Thereafter, March 1, 1948, Vaughan sub-let a portion of the work to Norman Concrete Works (called Norman) for $94,583, and the latter also gave Vaughan a performance bond for the full contract price, on which defendant, Western Casualty & Surety Company (called Western), was surety.

The contract between Vaughan and the United States provided for payments as follows:

"Article 16. Payments to contractors.—(a) Unless otherwise provided in the specifications, partial payments will be made as the work progresses at the end of each calendar month, or as soon thereafter as practicable, on estimates made and approved by the contracting officer. In preparing estimates

the material delivered on the site and preparatory work done may be taken into consideration.

"(b) In making such partial payments there shall be retained 10 percent on the estimated amount until final completion and acceptance of all work covered by the contract: Provided, however, That the contracting officer, at any time after 50 percent of the work has been comleted, if he finds that satisfactory progress is being made, may make any of the remaining partial payments in full: And provided further, that on completion and acceptance of each separate building, vessel, public work or other division of the contract, on which the price is stated separately in the contract, payment may be made in full, including retained percentages thereon, less authorized deductions."

Plaintiff's bond as surety for Vaughan to the Government was rather short, latitudinous and said nothing about retainage or withholding 10 percent or any other portion of the contract price to be paid Norman, but stated:

"Now, Therefore, if the principal shall promptly make payment to all persons supplying labor and material in the prosecution of the work provided for in said contract, and any and all duly authorized modifications of said contract that may hereafter be made, notice of which modifications of said contract that may hereafter be made, notice of which modifications to the surety being hereby waived, then this obligation to be void; otherwise to remain in full force and virtue."

However, both the sub-contract and bond, by Norman with Vaughan, in which defendant was surety, contained provisions for retaining by Vaughan 10 per cent of the entire price, as appears from the following excerpts from those two documents:

The Contract

"It is understood and agreed to by both parties that we shall be paid on a monthly estimate basis as furnished you by the Public Roads Administration and that you shall retain ten per cent (10%) of the monthly estimates until the work is accepted and paid for by the Public Roads Administration."

The Vaughan-Norman Bond, on which defendant was surety:

"Now, Therefore, the condition of this obligation is such that if the Principal shall faithfully perform the terms and conditions of the contract *and pay all persons furnishing labor and materials thereon, and shall* indemnify and save harmless the Obligee by reason of failure so to do, then this obligation shall be null and void; otherwise to remain in full force and effect.

*"Provided, However, That the Obligee will not make final settlement with the Principal or release to him any portion of the retained percentage without the written consent of the Surety."*

It thus appears that meticulous care was used in wording both contract and bond for the sub-let work. However, stipulations of this nature, in bonding contracts, are for the benefit of everyone concerned having a financial interest, including owner, contractor, laborers, materialmen and bondsmen, where that purpose reasonably appears.

Norman completed its work which was approved and accepted, the money to pay for it was passed, presumably, by the Government, to Vaughan, who in turn, without the knowledge or consent of defendant, surety, or creditors of Norman paid the latter who failed to pay the following claims incurred by it in doing the job: Faulkner Concrete Company $5,112.40, Lion Oil Company $786.64, and Pylates Welding and Machine Shop $552.67, a total of $6,451.71. Suits were filed upon those claims in the State Court

against Hartford, who, as surety, paid them and in turn brought this suit.

In disposing of motions by defendant for particulars and for summary judgment, by consent, the following order was entered by the Judge of this Court:

"Came on to be heard the Defendant's motion for a bill of particulars, whereupon Plaintiff, through its counsel of record, announced that it elected: (1) to stand and proceed exclusively upon its position that Plaintiff is entitled to recover as a subrogee of third parties paid by Plaintiff, viz.: Faulkner Concrete Pipe Company; Lion Oil Company and Pylate's Welding Machine Shop; and (2) to deny the materiality of, but to concede, for the purposes of this suit, the fact that M. C. Vaughan released retainage in the amount of $9,458.30 without Defendant's knowledge or consent, expressed or implied; *and (3) that said retainage has not been tendered or made available to Defendant and that Plaintiff cannot and will not attempt to justify as a subrogee of M. C. Vaughan; and (4) to abandon anything in the form of allegations, statements or denials in the pleadings or record to the contrary.*

"Wherefore, the Court is of the opinion that the particulars called for in Defendant's motion are immaterial to the issues thus defined and it is ordered that Plaintiff's election, as above recited, supercede anything to the contrary in the pleadings and record herein and that Defendant's motion for a bill of particulars be overruled."

This obligation of Hartford to protect others against violation of primary contract by Vaughan included the surety for Norman.

At the trial the claims paid by Hartford were stipulated, with the concluding paragraph reading as follows:

"That Norman Concrete Works completed Part C of Project 3M1A, Natchez Trace Parkway, Leake County, Mississippi, without default, at a profit in excess of $6500.-00, subject to and before allowance for the claims aforesaid of Faulkner, Lion and Pylate's and that there was enough retainage in the job to have satisfied said claims but said retainage was by M. C. Vaughan released to Norman Concrete Works without the knowledge or consent, express or implied, of Defendant, and same was not applied in payment of said claims."

Plaintiff has chosen to rely solely on its claim to subrogation to the rights of the creditors whose bills it paid.

It and defendant were paid sureties, the first on the whole and the latter that part of the work sub-contracted by Norman from Vaughan in the sub-contract. Therefore, Hartford's bond guaranteed all of it against injurious acts of Vaughan, including labor, materialmen and all other persons having a financial interest in the subject matter covered by that contract.

The question here, therefore, is: Which has the superior equity in the subject matter, Hartford or Western, under the facts of this case.

Effective subrogation does not arise by the assignment of the superior right of the creditor alone. If the relation of the assignee to the subject matter is such that he is answerable as surety, for a principal who in turn is bound by the same contract to others who are without fault, then such a surety cannot escape by doing that which his bond required him to do, i. e. paying the creditors to whom his principal was bound, even though he take an express assignment.

But for violation of the retaining clause by Vaughan, there would have been no loss for either Hartford or Western to make good for Norman's indebtedness to his own creditors. On the other hand, by the very terms of the primary contract and bond, Hartford was answerable for Vaughan's wrongful acts to all, including the defendant. See 2 Bouv.Law Dict., Rawle's Third Revision,

"Subrogation" and authorities cited; also National Surety Corp. v. Edwards House Co., 1944, 191 Miss. 884, 4 So.2d 340, 137 A.L.R. 697; Oxford Production Credit Association v. Bank of Oxford, 1944, 196 Miss. 50, 16 So.2d 384. Taking assignments from the furnishers of labor, materials and supplies conveyed no better right to Hartford, who was already liable without a superior equity over Western.

Plaintiff has cited many authorities from other states, as well as text books, and while those by the Mississippi Court, of course, control, none of the sureties, notwithstanding superior rights of the creditors, were allowed to recover where the principal was in default, whether the subrogation was claimed by effect of the law or by assignment over another having a superior equity, as I believe defendant has in this case. It owed Vaughan nothing, and had it paid the creditors itself, as plaintiff did, would have been in a stronger position, from an equitable standpoint as against Vaughan, and plaintiff, as surety, for failure to withhold the 10% of the contract price from Norman, as they bound themselves to do. Of course, a similar promise was made by Norman to the same creditors for which defendant, surety, was bound. But under the facts this carried no obligation to Vaughan or his surety, the plaintiff. On the other hand the order of liability in the very nature of things ran in the opposite direction. Vaughan, presumably, came into possession of the money first, and, contrary to his promise, turned it over to Norman, "without the knowledge or consent" of Western according to the stipulation of facts between the parties.

Plaintiff also cites as more "on all fours" with the present case than any other, Massachusetts Bonding & Insurance Company v. Morley, 8 Cir., 72 F.2d 303, 304. While not in accord with all that was said in that case, for it seems obvious to me if the purpose was to protect those to whom the money was to be paid, the idea was badly expressed in saying the 10% was to be held back, not only until all the conditions stipulated were performed, "exclusively at the time and in the manner specified * * * and until the expiration of the time within which liens or notices of liens may be filed, and until their discharge, * * *", along with other repetition, while at the same time specifying regular periods at which payments on the contract had to be made. In effect, the Court said: "You have so messed this contract up, there is nothing to do but for the sureties to pay the bills".

Plaintiff's demands should be rejected.